234 N.J. Super. 56 (1989)
560 A.2d 85
RENEE ANN GWODZ, PLAINTIFF-APPELLANT,
v.
RONALD GWODZ, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted June 5, 1989.
Decided June 20, 1989.
*59 Before Judges PETRELLA, SHEBELL and LANDAU.
Rosen & Avigliano, attorneys for appellant (Dennis J. Avigliano on the brief).
Glucksman & Weitzman, attorneys for respondent (Donald M. Weitzman on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Plaintiff-appellant Renee Ann Gwodz (Renee) and defendant-respondent Ronald Gwodz (Ronald) were divorced in 1985, and their property settlement agreement was incorporated into the judgment of divorce. Although containing a section respecting federal taxes, the agreement was silent as to allocation of income tax exemptions for the two children of the marriage, Sandra and Jason.
A post-judgment motion in 1986 resulted in establishment of support arrearages and a requirement that support payments be made through Probation. The 1986 order also enforced a cost of living adjustment and imposed limitations upon Ronald's visitation rights, pending psychological evaluation of both parties and the children.
In December 1987, Ronald moved to secure unsupervised visitation with Jason, and for visitation under psychological supervision with Sandra. He asked also that Renee be responsible to pay for Sandra's counseling, for Jason's additional counseling, and that Renee be compelled to attend counseling sessions without her present husband. Ronald further sought to reduce the arrearages, to require that all medical claims be made through his insurance carrier, and to be permitted to claim tax exemptions for both children. Renee's cross-motion requested continued psychological counseling, supervised visitation with Jason, proof that Ronald was receiving alcohol dependency and behavioral counseling, establishment of additional arrearages and counsel fees.
*60 An order was entered on June 6, 1988 which reflected certain agreements reached by the parties on visitation and counseling issues, while reserving determination respecting arrearages and credits. The order also provided that:
[S]ubmission of medical bill claims to insurance carriers shall be as set forth in the prior Orders of this Court. Plaintiff shall forward legible copies of all medical bills to the defendant to submit to his insurance carrier and reimbursements from all policies shall be credited to Mr. Gwodz' obligations and any surplus payments shall be shared equally by the parties; and ... each party shall be entitled to claim one child as an exemption for income tax purposes; ...
Renee here appeals only from the above-quoted portion of the June 6 order, urging that it was error to allow Ronald to claim one child as a tax deduction and to provide that the children's medical bills shall be submitted, in the first instance, through his insurance carrier.

THE TAX EXEMPTION PROVISION
Two subquestions are presented by the tax exemption issue: authority of the court to make the order, and the adequacy of the record and findings in support of the court's exercise of such authority.
As to the question of authority for exercise of the power to order that each party shall be entitled to claim one child as an income tax exemption, we cannot speak to its persuasiveness with the Internal Revenue Service. However, as an exercise of the equitable powers of the Chancery Division, we are in accord with the substantial and, we think, better reasoned authority which supports the authority of a state court to exercise such allocation power. See, e.g., Lincoln v. Lincoln, 155 Ariz. 272, 746 P.2d 13 (Ct.App. 1987); In re Marriage of Einhorn, 178 Ill. App.3d 212, 127 Ill.Dec. 411, 418-419, 533 N.E.2d 29, 36-37 (App.Ct. 1988); Wassif v. Wassif, 77 Md. App. 750, 551 A.2d 935, 940 (Ct.Spec.App. 1989), certif. den. 315 Md. 692, 556 A.2d 674 (1989); Fudenberg v. Molstad, 390 N.W.2d 19 (Minn. Ct. App. 1986); In re Marriage of Milesnick, 765 P.2d 751, 753-754 (Mont. 1988); McKenzie v. Jahnke, 432 N.W.2d 556 (N.D. 1988); *61 Fleck v. Fleck, 427 N.W.2d 355, 359 (N.D. 1988); Hughes v. Hughes, 35 Ohio St.3d 165, 518 N.E.2d 1213 (1988), cert. den. ___ U.S. ___, 109 S.Ct. 124, 102 L.Ed.2d 97 (1988); Cross v. Cross, 363 S.E.2d 449, 456-460 (W. Va. 1987); In re Marriage of Peacock, 54 Wash. App. 12, 771 P.2d 767 (Ct.App. 1989); Pergolski v. Pergolski, 143 Wis.2d 166, 420 N.W.2d 414, 417 (Ct.App. 1988). But see McKenzie v. Kinsey, 532 So.2d 98 (Fla. Dist. Ct. App. 1988); Varga v. Varga, 173 Mich. App. 411, 434 N.W.2d 152 (Ct.App. 1988); Lorenz v. Lorenz, 166 Mich. App. 58, 419 N.W.2d 770 (Ct.App. 1988); Stickradt v. Stickradt, 156 Mich. App. 141, 401 N.W.2d 256 (Ct.App. 1986); Theroux v. Boehmler, 410 N.W.2d 354 (Minn. Ct. App. 1987); Gerardy v. Gerardy, 406 N.W.2d 10 (Minn. Ct. App. 1987); Valento v. Valento, 385 N.W.2d 860 (Minn. Ct. App. 1986); In re Marriage of Nishimura, 86 Or. App. 392, 738 P.2d 1018 (Ct.App. 1987); In re Marriage of Vinson, 83 Or. App. 487, 732 P.2d 79 (Ct.App. 1987), review den. 303 Or. 332, 736 P.2d 566 (1987); Gleason v. Michlitsch, 82 Or. App. 688, 728 P.2d 965 (Ct.App. 1986); Davis v. Fair, 707 S.W.2d 711 (Tex. Ct. App. 1986).
There are cases which hold that exercise by a state court of the power to determine a federal tax exemption is in violation of federal constitutional and statutory law. See, e.g., In re Marriage of Emery, 179 Ill. App.3d 744, 128 Ill.Dec. 569, 534 N.E.2d 1014 (App.Ct. 1989); Sarver v. Dathe, 439 N.W.2d 548 (S.D. 1989). We disagree with the applicability of those decisions, because we recognize that federal courts and agencies must be the ones who interpret, consistently with the objectives of Congress, the federal tax statutes. As recognized by the West Virginia Supreme Court of Appeals, however, the effect of the allocation of income tax exemptions for children by a state court is ultimately to alter the net income available for child support. A court may properly seek to maximize that net income and in doing so may, indeed should, recognize the beneficial impact of the exemption in adjusting the respective support obligations of each party. See Cross v. Cross, 363 S.E.2d at 460.
*62 We recognize that § 152(e)(1) of the Internal Revenue Code (26 U.S.C. § 152(e)(1)) as amended effective shortly before the 1985 divorce of the parties, gives a custodial parent the right to the exemption, subject to waiver by that parent. Having associated ourselves with the Cross, Fudenberg, and Hughes lines of reasoning, we are satisfied that the trial court had the power to exercise authority to effectively allocate exemptions through use of its equitable power. We are concerned, however, with the failure of the trial judge to consider or to quantify the effect of that exercise upon each party, and the extent to which it would require reconsideration of the child support provisions of the judgment. Further, the trial judge should have considered the request for specific designation of exemptions, not merely as a call for resolution of an issue unconsidered in the settlement agreement, but in light of the fact that the 1984 Internal Revenue Code amendments embodied in § 152(e)(1) were in effect when the judgment in this case was entered in 1985.[1] Thus, Ronald's 1988 motion was actually a request for change in the status quo respecting exemptions, not merely resolution of an undecided question. Accordingly, while we recognize the legal right of the trial court to equitably enforce an allocation of tax exemptions between the parties,[2] subject to further modification if not accepted by the Internal Revenue Service, we must reverse and remand that portion of the order which provided for splitting the two tax exemptions. On remand, the trial judge shall consider evidence and make findings respecting the extent of child support actually provided by each parent (here, the trial judge recognized that the evidence was insufficient to do so), and if a change in tax exemptions is deemed warranted, determine whether change in *63 the existing support orders is required to reflect the benefits achieved by the change. See Cross, 363 S.E.2d at 460.
Moreover, the judge shall also consider whether the change in exemptions falls within the principles of Lepis v. Lepis, 83 N.J. 139, 149-153 (1980), because § 152(e)(1) was in effect at the time of the divorce judgment in this case.

CHILDREN'S MEDICAL BILLS
Renee contends that the trial judge erred in ordering that the children's medical claims be submitted first to Ronald's insurance carrier. She suggests that this, too, constitutes a change requiring adherence to Lepis standards.
The original agreement incorporated in the judgment provided that Ronald would pay half of Renee's actual cost of health and medical insurance to the extent applicable to the children. Paragraph 9 of the agreement provided that coverage would be changed only if Ronald's coverage was as comprehensive as that then available through Renee's employer. A similar provision was contained in Paragraph 12 of the agreement.
We hold that the trial judge did not err or abuse his discretion in providing that the children's medical bills shall be submitted first to Ronald's insurance carrier. In the first place, it appears that the agreement clearly contemplated the possibility of change in connection with the method of handling insurance. More significantly, however, it appears that an unauthorized change was made in that the insurance which Renee wishes to use primarily is that of her present husband, not that provided by her own employer as contemplated by the agreement. Contrary to Renee's argument on appeal, the ruling of the trial judge respecting primary insurance submission of the children's health costs was thus consistent with earlier orders of the court. In any event, it did not constitute a Lepis change.

*64 CONCLUSION
We reverse that portion of the order under appeal which allocated income tax exemptions between the parties, and we remand for proceedings consistent with this opinion on that issue. The remainder of the order under appeal is affirmed.
NOTES
[1] Both the settlement agreement and judgment were dated February 27, 1985.
[2] It would appear preferable in light of the language of 26 U.S.C. § 152(e)(2)(A) & (B) for the order to contain a direction providing that the custodial parent shall sign a written declaration as therein authorized.